1   STUART SEABORN (CA BAR NO. 198590)
    MONICA PORTER (CA BAR NO. 311974)
2   Disability Rights Advocates
    2001 Center Street, 4th Floor
3   Berkeley, California 94704-1204
    Tel:    (510) 665-8644
4   Fax:    (510) 665-8511
    sseaborn@dralegal.org
5   mporter@dralegal.org

6   MAIA GOODELL (Admitted *Pro Hac Vice*)
    Disability Rights Advocates
7   655 Third Avenue, 14th Floor
    New York, New York 10017
8   Telephone:    (212) 644-8644
    mgoodell@dralegal.org

9
    *Attorneys for Plaintiffs and the Proposed Class*
10

11
                    UNITED STATES DISTRICT COURT
12
                  NORTHERN DISTRICT OF CALIFORNIA
13

14

15
    Mental Health & Wellness Coalition, Erik X.,    **Case No. 5:18-cv-02895-NC**
16  Tina Y., Jacob Z., Harrison Fowler, Rose A.,
    Sofia B.,                                        **NOTICE OF MOTION AND MOTION**
17                                                   **FOR CLASS CERTIFICATION**
                    Plaintiffs,
18                                                   Date:    August 29, 2018
    v.                                               Time:    1:00 p.m.
19                                                   Place:   Courtroom 5, 280 South First Street,
    The Board of Trustees of the Leland Stanford     San Jose, California 95113
20  Junior University D/B/A Stanford University,     Judge:   Hon. Nathanael Cousins

21                  Defendant.

22

23

24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

<div style="text-align:center;vertical-align:middle;">
DISABILITY RIGHTS ADVOCATES<br>
2001 CENTER STREET, FOURTH FLOOR<br>
BERKELEY, CALIFORNIA 94704-1204<br>
(510) 665-8644
</div>

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES...........................................3

I.      INTRODUCTION ............................................................................... 3

II.     FACTS RELEVANT TO CLASS CERTIFICATION ...................................... 4

     A.     Stanford Maintains and Implements Policies that Exclude Students with Mental Health Disabilities Who Are at Risk of Self-Harm ........................... 4

          1.     Discriminatory Written Policies ................................. 4

          2.     Stanford's Exclusionary Practices ............................... 5

          3.     The Experiences of Named Plaintiffs and Similarly Situated Students Further Demonstrate Stanford's Consistent Implementation of its Discriminatory Leave Policies ....................................................................... 8

               a.     Individual Plaintiffs............................................8

               b.     Organizational Plaintiff......................................8

     B.     Non-discriminatory Leave Policies Can Remedy the Harms to the Class ......................................................................... 9

III.    THE PROPOSED CLASS ..................................................................... 9

IV.   LEGAL FRAMEWORK APPLICABLE TO CLASS CLAIMS .................................. 10

          1.     Stanford Is Required to Provide Full and Equal Enjoyment of Its Programs to All Students, Regardless of Disability ....................... 10

               a.     Stanford May Not Exclude Students from Its Education Programs and Services on the Basis of Their Mental Health Disabilities.............................................................10

               b.     Stanford May Not Discriminate Against Students with Mental Health Disabilities.............................................................12

          2.     Stanford Cannot Utilize Methods of Administration that Screen Out Students with Disabilities.............................................. 14

          3.     Stanford Has the Burden of Demonstrating that Accommodating Students at Risk of Self-Harm Would Present a Fundamental Alteration ...................................... 15

V.     ARGUMENT ..................................................................... 15

     A.     Legal Standards for Class Certification under Rule 23 ..................... 15

*Mental Health & Wellness Coalition et al. v. The Board of Trustees of the Leland Stanford Junior University*,
**Case No.: 5:18-cv-02895-NC**
**Plaintiffs' Motion for Class Certification**        i

|   | B. | | The Class Meets the Requirements of Rule 23(a) ................................. 16 |
| | | 1. | The Class is so Numerous that Joinder is Impracticable ......................... 16 |
| | | 2. | Class Members Share Many Common Questions of Law and Fact ........................................................................................ 18 |
| | | | a. Common Questions of Fact……………………………………..19 |
| | | | b. Common Questions of Law……………………………………..20 |
| | | 3. | The Named Plaintiffs' Claims are Typical of the Class .......................... 21 |
| | | 4. | Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class .................................................................. 23 |
| | C. | | The Class Meets the Requirements of Rule 23(b)(2)............................. 24 |
| VI. | CONCLUSION | | ................................................................................................ 25 |

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Mental Health & Wellness Coalition et al. v. The Board of Trustees of the Leland Stanford Junior University*,
**Case No.: 5:18-cv-02895-NC**
**Plaintiffs' Motion for Class Certification**                                                                                    ii

1

**TABLE OF AUTHORITIES**

2

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**Cases**

*A.G. v. Paradise Valley Unified Sch. Dist. No. 69,*
   815 F.3d 1195 (9th Cir. 2016) .................................................................. 11

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997)................................................................................. 25

*Armstrong v. Davis,*
   275 F.3d 849 (9th Cir. 2001) ........................................................ 18, 21, 22

*Baby Neal for and by Kanter v. Casey,*
   43 F.3d 48 (3d Cir. 1994) ........................................................................ 18

*Bates v. United Parcel Service,*
   204 F.R.D. 440 (N.D. Cal. 2001)............................................................. 16

*Bragdon v. Abbott,*
   524 U.S. 624 (1998)................................................................................. 12

*Californians for Disability Rights v. Cal. Dep't of Transp.,*
   249 F.R.D. 334 (N.D. Cal. 2008)......................................................... 4, 23

*Celano v. Mariott Int'l, Inc.,*
   No. C 05-4004 PJH, 2008 WL 239306 (N.D. Cal. Jan. 28, 2008) ........... 14

*Cervantez v. Celestica Corp.,*
   253 F.R.D. 562 (C.D. Cal. 2008)............................................................. 17

*Cmty. House, Inc. v. City of Boise,*
   490 F.3d 1041 (9th Cir. 2006) ................................................................. 13

*Crowder v. Kitagawa,*
   81 F.3d 1480 (9th Cir. 1996) ................................................................... 11

*Dark v. Curry Cty.,*
   451 F.3d 1078 (9th Cir. 2006) ................................................................. 11

*Davis v. Astrue,*
   250 F.R.D. 476 (N.D. Cal. 2008)............................................................. 18

*Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.,*
   804 F.3d 178 (2d Cir. 2015) .................................................................... 15

*Ellis v. Costco Wholesale Corp.,*
   657 F.3d 970 (9th Cir. 2011) ................................................................... 23

*Evon v. Law Offices of Sidney Mickell,*
   688 F.3d 1015 (9th Cir. 2012) ................................................................. 18

*Gambini v. Total Renal Care,*
   486 F.3d 1087 (9th Cir. 2007) ........................................................... 10, 11

*Mental Health & Wellness Coalition et al. v. The Board of Trustees of the Leland Stanford Junior University,*
**Case No.: 5:18-cv-02895-NC**
**Plaintiffs' Motion for Class Certification**                                                                iii

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982) .......................................................................................... 22

*Gonzalez v. Sessions*,
  No. 18-cv-01869-JSC, 2018 WL 2688569 (N.D. Cal. June 5, 2018) ...................................... 16

*Gray v. Golden Gate Nat'l Recreational Area*,
  279 F.R.D. 501 (N.D. Cal. 2011) .................................................................... 18, 24

*Guckenberger v. Boston Univ.*,
  957 F. Supp. 306 (D. Mass. 1997) ........................................................................ 19

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...................................................................... 22, 23

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ............................................................................ 22

*In re Cooper Cos. Inc. Sec. Litig.*,
  254 F.R.D. 628 (C.D. Cal. 2009) ........................................................................ 19

*In re Hyundai & Kia Fuel Econ. Litig.*,
  881 F.3d 679 (9th Cir. 2018) ............................................................................ 18

*In re online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ............................................................................ 23

*Indep. Living Res. v. Or. Arena Corp.*,
  982 F. Supp. 698 (D. Or. 1997) ......................................................................... 14

*Jennings v. Rodriguez*,
  138 S. Ct. 830 (2018) .................................................................................. 24

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) .......................................................................... 22

*Lee v. Retail Store Emp. Bldg. Corp.*,
  No. 15-CV-04768, 2017 WL 346021 (N.D. Cal. Jan. 24, 2017) ................................... 13, 14

*Mark H. v. Lemahieu*,
  513 F.3d 922 (9th Cir. 2008) ........................................................................... 11

*McGary v. City of Portland*,
  386 F.3d 1259 (9th Cir. 2004) .......................................................................... 14

*Nunes v. Wal-Mart Stores, Inc.*,
  164 F.3d 1243 (9th Cir. 1999) .......................................................................... 12

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ..................................................................... 4, 18, 25

*Riker v. Gibbons*,
  No. 3.08 CV 00115 LRH RAM, 2009 WL 910971 (D. Nev. Mar. 31, 2009) ......................... 18

*Mental Health & Wellness Coalition et al. v. The Board of Trustees of the Leland Stanford Junior University*,
**Case No.: 5:18-cv-02895-NC**
**Plaintiffs' Motion for Class Certification**                                                    iv

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2011) ................................................................ 25

*Roe v. Hous. Auth. of City of Boulder*,
    909 F. Supp. 814 (D. Co. 1995) ............................................................. 14

*Sali v. Corona Reg'l Med. Ctr.*,
    889 F.3d 623 (9th Cir. 2018) ............................................................ 23, 24

*Soares v. Flower Foods, Inc.*,
    320 F.R.D. 464 (N.D. Cal. 2017) ........................................................... 16

*Tamara v. El Camino Hosp.*,
    964 F. Supp. 2d 1077 (N.D. Cal. 2013) ................................................. 12

*The Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*,
    No. 15-CV-0224-YGR, 2016 WL 314400 (N.D. Cal. Jan. 25, 2016) ....... 17

*Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ............................................................... 22

*V.S. by & through Sisneros v. Oakland Unified Sch. Dist.*,
    No. 14-CV-05144-JST, 2015 WL 3463475, (N.D. Cal. May 28, 2015) ..... 11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................. 18, 19, 20

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ......................................................... 21, 22

*Wong v. Regent of Univ. of Cal.*,
    192 F.3d 807 (9th Cir. 1999) ........................................................... 11, 15

**Statutes**

29 U.S.C. § 705(20) ..................................................................................... 10

29 U.S.C. § 794 .............................................................................................. 2

29 U.S.C. § 794(a) ....................................................................................... 10

42 U.S.C. § 12102 ........................................................................................ 10

42 U.S.C. § 12182 .......................................................................................... 2

42 U.S.C. § 12182(a) ................................................................................... 10

42 U.S.C. § 12182(b)(1)(D)(i) ..................................................................... 14

42 U.S.C. § 12182(b)(2)(A)(i) ..................................................................... 14

42 U.S.C. § 12182(b)(3) .............................................................................. 12

42 U.S.C. § 3601 ............................................................................................ 2

*Mental Health & Wellness Coalition et al. v. The Board of Trustees of the Leland Stanford Junior University*,
**Case No.: 5:18-cv-02895-NC**
**Plaintiffs' Motion for Class Certification**                                                        v

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

42 U.S.C. § 3602(b) ........................................................................................... 13

42 U.S.C. § 3602(c) ........................................................................................... 13

42 U.S.C. § 3602(h) ........................................................................................... 13

42 U.S.C. § 3604(f)(1)–(2) ................................................................................ 12

42 U.S.C. § 3604(f)(3)(B) .................................................................................. 13

42 U.S.C. § 3604(f)(9) .................................................................................. 13, 14

42 U.S.C. § 3617 ................................................................................................ 13

Cal Civ Code § 51 ............................................................................................. 10

Cal. Civ. Code § 51(b) ........................................................................................ 2

Cal. Civ. Code § 51(e)(1) .................................................................................. 10

Cal. Civ. Code § 51(f) ....................................................................................... 10

Cal. Gov. Code § 11135 ...................................................................................... 2

Cal. Gov. Code § 11135(a) ................................................................................ 10

Cal. Gov. Code § 11135(c) ................................................................................ 10

Cal. Gov. Code § 12900 ...................................................................................... 2

Cal. Gov. Code § 12926(j) ................................................................................ 10

Cal. Gov. Code § 12926.1 ................................................................................. 10

Cal. Gov. Code § 12927(c)(1) ........................................................................... 13

Cal. Gov. Code § 12927(d) ............................................................................... 13

Cal. Gov. Code § 12955(a) ............................................................................... 13

Cal. Gov. Code § 12955(d) ............................................................................... 13

Cal. Gov. Code § 12955(k) ............................................................................... 13

**Other Authorities**

U.S. DEP'T OF HOUSING AND URBAN DEVELOPMENT, OFFICE OF FAIR HOUSING
    AND EQUAL OPPORTUNITY, *Joint Statement of the Department of Housing and
    Urban Development and the Department of Justice: Reasonable
    Accommodations Under the Fair Housing Act*
    (May 17, 2004) .......................................................................................... 14

*Mental Health & Wellness Coalition et al. v. The Board of Trustees of the Leland Stanford Junior University,*
**Case No.: 5:18-cv-02895-NC**
**Plaintiffs' Motion for Class Certification**                                                                      vi

1

**Rules**

2  Federal Rules of Civil Procedure 23(a) ................................................................ 1, 16

3  Federal Rules of Civil Procedure 23(a)(1) ................................................................ 16

4  Federal Rules of Civil Procedure 23(a)(2) ................................................................ 18

5  Federal Rules of Civil Procedure 23(a)(3) ................................................................ 21

6  Federal Rules of Civil Procedure 23(a)(4) ................................................................ 23

7  Federal Rules of Civil Procedure 23(b)(2) ........................................................ 1, 16, 24

8
**Treatises**

9  1 Rubenstein, *Newberg on Class Actions*
10    (5th ed. Supp. 2018) ................................................................................................ 23

11  7 Rubenstein, *Newberg on Class Actions*
      (5th ed. 2012) ......................................................................................................... 19
12
**Regulations**
13
14  24 C.F.R. § 100.20 .................................................................................................... 12

15  24 C.F.R. § 100.201 .................................................................................................. 13

16  24 C.F.R. § 100.202(d) ............................................................................................. 13

17  24 C.F.R. § 100.60(a) ............................................................................................... 12

18  24 C.F.R. § 100.60(b) ............................................................................................... 12

19  28 C.F.R. § 36.104 .................................................................................................... 12

20  28 C.F.R. § 36.201(a) ............................................................................................... 10

21  28 C.F.R. § 36.204 .................................................................................................... 14

22  28 C.F.R. § 36.301(a) ............................................................................................... 14

23  34 C.F.R. § 104.4 ...................................................................................................... 10

24  34 C.F.R. § 104.4(b)(4) ............................................................................................ 14

25  34 C.F.R. § 104.42(b)(2) .......................................................................................... 14

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Mental Health & Wellness Coalition et al. v. The Board of Trustees of the Leland Stanford Junior University,*
**Case No.: 5:18-cv-02895-NC**
**Plaintiffs' Motion for Class Certification**                                                           **vii**

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on August 29, 2018, at 1:00 PM, or at such other date and time as may be ordered by the Court in Courtroom 5 on the Fourth Floor of the above-captioned Court, located at 280 South First Street, San Jose, California 95113, Plaintiffs Mental Health & Wellness Coalition, Erik X., Tina Y., Jacob Z., Harrison Fowler, Rose A., and Sofia B., on behalf of themselves and all others similarly situated, will and hereby do move this Court for an order certifying the above-titled action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2).

As set forth more fully herein, Plaintiffs easily satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a) of the Federal Rules of Civil Procedure. This class is also appropriate for certification under Rule 23(b)(2) because Defendant has acted or refused to act with regard to the class as a whole.

On May 29, July 11, July 12, and July 16, 2018, counsel conferred about this motion by telephone; Defendant declined to consent to class certification. The parties have agreed to enter into settlement discussions with a mediator at JAMS. While Plaintiffs have noticed a hearing date in accordance with the Court's rules (N.D. Cal. L.R. 7-2(a), Mag. J. Cousins Civ. Standing Order: Scheduling), the parties plan on stipulating to a briefing schedule and jointly requesting a continuance of that date as well as the previously-scheduled Case Management Conference (ECF No. 22) to allow them time to engage in settlement discussions prior to dedicating additional resources to this motion. The parties have also stipulated that Defendants will have thirty days from the date of the filing of Plaintiffs' Amended Complaint to file a responsive pleading.

This motion is based upon this Notice and Memorandum of Points and Authorities; the accompanying declarations and exhibits; all pleadings and papers on file in this action; and any argument or evidence that may be presented at the hearing in this matter, if a hearing is deemed necessary.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

## RELIEF SOUGHT

By this motion, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), Plaintiffs request that the Court:

1. Determine that a class action is proper as to Plaintiffs' causes of action under (1) the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*; (2) Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*; (3) the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*; (4) the Unruh Civil Rights Act, Cal Civ. Code § 51, *et seq.*; (5) California Government Code § 11135; and (6) the California Fair Employment and Housing Act, Cal. Gov. Code § 12900, *et seq.*

2. Certify a class defined as: All Stanford students who have a mental health disability and have been or will be subject to Stanford's policies and practices regarding students at risk of self-harm, including students who have been deterred from participating in the programs and services Stanford makes available to its students because they are aware of these policies and practices and fear being subjected to them.

3. Appoint Named Plaintiffs Mental Health & Wellness Coalition, Erik X., Tina Y., Jacob Z., Harrison Fowler, Rose A., and Sofia B. as class representatives, and the law firm of Disability Rights Advocates as class counsel

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This case is about ending Stanford University's systemic discrimination against students with mental health disabilities. Stanford has a blanket practice of banning students from its programs and housing when students are at risk of self-harm due to a mental health disability. Immediately after reports of self-harm, suicidal ideation, or crisis behavior, Stanford's practice is to mandate and/or pressure students into taking leaves of absence; requiring immediate withdrawal from all classes, programs, and housing, without any discussion of appropriate disability-based accommodations that would allow the students to remain on campus and continue to participate in Stanford's programs. Further perpetuating this harm and the stigma related to mental health disabilities, Stanford requires students wishing to return to campus to write statements accepting blame for their disability-related behavior, submit to invasive examination of their medical records, and participate in mandated mental health treatment.

Stanford maintains these policies and practices in disregard of federal and state legal protections for disability-related behaviors. The leave of absence policies governing students at risk of self-harm make no reference to disability rights protections and contain no process for consideration of reasonable accommodations. Rather, as a matter of practice, Stanford excludes students who are at risk of self-harm as a direct result of their disabilities, thereby denying such students full and equal access to their programs and services on the basis of disability, in violation of federal and state disability laws.

The evidence indicates that the discriminatory practices at issue are widespread, impacting all Stanford students with mental health disabilities who are at risk of self-harm. Through this action, Named Plaintiffs seek one thing only: for Stanford to modify its discriminatory policies and practices so that they and similarly situated students can enjoy the same access to Stanford's programs and services that Stanford offers students without mental health disabilities. Because it challenges only systemic policies and seeks only injunctive relief,

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

this case presents a classic Rule 23(b)(2) class action. *See Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014); *Californians for Disability Rights v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 345 (N.D. Cal. 2008) (hereinafter "*Caltrans*") ("Cases challenging an entity's policies and practices regarding access for the disabled represent the mine run of disability rights class actions certified under Rule 23(b)(2)"). Class certification is the most efficient and manageable method for addressing the common legal and factual questions at issue. This Court should therefore grant Plaintiffs' Motion for Class Certification.

## II.     FACTS RELEVANT TO CLASS CERTIFICATION

### A.     <u>Stanford Maintains and Implements Policies that Exclude Students with Mental Health Disabilities Who Are at Risk of Self-Harm</u>

Stanford maintains written policies and engages in system-wide practices that discriminate against students with mental health disabilities who are at risk of self-harm ("Discriminatory Leave Policies").

#### 1.     <u>Discriminatory Written Policies</u>

Stanford's "Dean's Leave of Absence Policy" includes language subjecting students to mandatory leaves of absence—effectively excluding such students from all campus programs and activities—when Stanford perceives that their mental health disability may put that student's own life or safety at risk. (*See* Declaration of Stuart Seaborn ("Seaborn Decl."), Ex. 1). According to this policy, "students whose psychiatric, psychological or medical condition jeopardizes the life or safety of *self* or others, or whose actions significantly disrupt the activities of the University community may be placed on a mandatory leave." (Seaborn Decl. Ex. 1) (emphasis added).[1] Tellingly, the policy contains no reference whatsoever to disability rights protections and no reference to reasonable accommodations that might allow students at risk of self-harm due to mental health disabilities to stay in campus programs.

Stanford has also recently codified a housing policy that mirrors the language of the Dean's Leave of Absence Policy. This policy provides for housing "holds" that eject students

---

[1] This case does not challenge Stanford's ability to exclude students who are individually evaluated under legally acceptable standards and determined to pose a direct threat to others.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   from University housing and bar them from returning during the "hold" period where the student

2   is at "risk of harm to self." (Seaborn Decl. Ex. 2). Though the new written policy includes

3   language regarding reasonable accommodations in connection with self-care obligations, it

4   contains no such language regarding students with mental health disabilities who are at risk of

5   self-harm. Nor does the language regarding removal from housing based on a risk of self-harm

6   mention or acknowledge any disability rights protections.

7               2.      Stanford's Exclusionary Practices

8           In practice, Stanford routinely requires students to take leaves of absence when it

9   perceives that the students may be at risk of self-harm or experiencing suicidal ideation, even

10  where the students are receiving treatment for those conditions. (*See* Declaration of Erik X.

11  ("Erik X. Decl.") ¶¶ 9–10; Declaration of Tina Y. ("Tina Y. Decl.") ¶ 14; Declaration of Jacob Z.

12  ("Jacob Z. Decl.") ¶ 11, 13, 17; Declaration of Harrison Fowler ("Fowler Decl.") ¶¶ 12–13;

13  Declaration of Rose A. ("Rose A. Decl.") ¶¶ 11, 18; Declaration of Erica C. ("Erica C. Decl.") ¶¶

14  12–14). Stanford staff also frequently coerce students who are at risk of self-harm due to a

15  mental health disability to accept leaves of absence on a "voluntary" basis, often describing a

16  leave of absence as the only option or threatening severe consequences such as expulsion or

17  permanent loss of University housing if the students do not accept such "voluntary" leaves. (*See*

18  Erik X. Decl. ¶ 10, Fowler Decl. ¶¶ 10–14, Rose A. Decl. ¶¶ 11–22, Erica C. Decl. ¶¶ 12–14).

19          Named Plaintiffs' and proposed class members' declarations and supporting

20  documentation demonstrate at least six cases where Stanford either required or coerced students

21  at risk of self-harm due to mental health disabilities into going on leaves of absence. (*See* Erik X.

22  Decl. ¶ 9–10; Jacob Z. Decl. ¶¶ 8, 11; Fowler Decl. ¶¶ 12–13; Rose A. Decl. ¶ 18, 22;

23  Declaration of Sofia B. ("Sofia B. Decl.") ¶¶ 11–13; Erica C. Decl. ¶¶ 12–14). Additionally,

24  several students have provided testimony that they know other students who Stanford has

25  similarly placed on leaves of absence for mental health reasons. (*See* Erik X. Decl. ¶ 21 (knows

26  at least fifteen others in the past five years), Declaration of Alex D. ("Alex D. Decl.") ¶ 13 (has

27  at least four friends who have been placed on leaves for mental health reasons), Declaration of

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   Ashley K. ("Ashley K. Decl.") ¶ 19 (members of the Mental Health & Wellness Coalition)). The

2   evidence also documents several situations where Residence Deans and other staff contacted

3   such students while they were receiving inpatient treatment and pushed them to accept leaves of

4   absence. (*See* Erik X. Decl. ¶¶ 9–10, Ex. 1; Jacob Z. Decl. ¶¶ 8, 11; Fowler Decl. ¶¶ 10–13; Rose

5   A. Decl. ¶¶ 11–18; Sofia B. Decl. ¶¶ 11–13; Erica C. Decl. ¶¶ 12–14). Students who resist taking

6   a leave of absence "voluntarily" are routinely placed on mandated leaves of absence. (*See* Jacob

7   Z. Decl. ¶¶ 21–24; Declaration of Lark Trumbly ("Trumbly Decl.") ¶¶ 12–14).

8          Further, the correspondence from Stanford's administrators include repeated examples of

9   Stanford implementing leaves of absence without engaging in an interactive process to assess

10  possible reasonable accommodations that might allow such students to remain on campus. (*See*

11  Jacob Z. Decl. Ex. 2; Fowler Decl. Ex. 1; Rose A. Decl. Ex. 1). Indeed, when students and their

12  doctors made such reasonable accommodation requests, the requests were uniformly denied. (*See*

13  Jacob Z. Decl. ¶¶ 21–24, Ex. 4; Rose A. Decl. ¶¶ 14–16; Alex D. Decl. ¶¶ 7–9).[2] In none of these

14  cases did Stanford conduct an analysis of whether the students posed a direct threat to the health

15  and safety of others. Rather, Stanford consistently blamed students for the purported "impact"

16  the perceived threat that they might hurt *themselves* had on the community. (*See* Erik X. Decl. ¶

17  12, Ex. 2; Tina Y. Decl. ¶¶ 6, 21; Jacob Z. Decl. ¶¶ 8, 16; Rose A. Decl. ¶¶ 20, 28, Ex. 3; Sofia

18  B. Decl. ¶ 11; Erica C. Decl. ¶ 13; Trumbly Decl. ¶ 8, 16).

19         Once Stanford coerces or requires such students to take leaves of absences based on a

20  risk of self-harm due to mental health disabilities, its practices are remarkably consistent.

21  Stanford immediately bans such students from University housing programs and all academic

22  programs. (*See* Erik X. Decl. ¶ 12, Ex. 2; Tina Y. Decl. ¶ 14; Jacob Z. Decl. ¶¶ 11, 13–14, 17,

23  24, Exs. 1–2, 5; Fowler Decl. Ex. 1; Rose A. Decl. ¶ 11, 15–16 Ex. 1; Sofia B. Decl. ¶¶ 11–13;

24  Erica C. Decl. ¶¶ 12–14; Trumbly Decl. ¶¶ 7–8, 10, 20–22). Stanford requires these students to

25

26  [2] In a number of cases, students specifically appealed to Stanford administrators to not put them
     on a leave of absence because the home to which they would have to return was not healthy or
27  safe to them and may further negatively impact their mental health. (*See* Jacob Z. Decl. ¶ 21,
     Fowler Decl. ¶ 10, Sofia B. Decl. ¶ 11). Stanford placed all of these students on leaves of
28  absence anyway.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   fully vacate the university community within two or three days, in some instances not even

2   allowing such students to return to campus to retrieve belongings or to say goodbye to friends

3   without supervision. (*See* Rose A. Decl. ¶¶ 16, 25; Trumbly Decl. ¶¶ 8, 23–24).

4        Stanford also places strict, punitive requirements on those students who seek to return to

5   campus after being placed on leaves of absence. Stanford requires such students to write

6   "personal statements" demonstrating the students' "understanding of why [their] behaviors are of

7   concern," and "…insight into the impact of [their] behavior on others." (*See* Erik X. Decl. ¶¶ 16,

8   Ex. 2; Jacob Z. Decl. ¶ 25, Ex. 2; Fowler Decl. ¶ 20, Ex. 1; Rose A. Decl. ¶ 27, Ex. 1; Sofia B.

9   Decl. ¶ 18; Erica C. Decl. ¶ 19; Trumbly Decl. ¶¶ 16, 25). None of the correspondence from

10  Stanford related to these punitive conditions mentions any disability-rights protections or even

11  the possibility of reasonable accommodations. (*See* Erik X. Decl. ¶¶ 12, 17, Exs. 2–3; Jacob Z.

12  Decl. ¶¶ 14, 25, Exs. 1–2, 5; Fowler Decl. ¶ 20, Ex. 1; Rose A. Decl. Exs. 1–5; Sofia B. Decl. ¶¶

13  12, 18; Erica C. Decl. ¶ 13, 18; Trumbly Decl. ¶¶ 17, 23).

14       Students who have been subject to these readmission conditions felt as if Stanford was

15  requiring them to accept blame for their disability-related behavior and for having a negative

16  impact on the community. (*See* Erik X. Decl. ¶ 18; Tina Y. Decl. ¶ 25; Jacob Z. Decl. ¶ 26;

17  Fowler Decl. ¶ 20; Rose A. Decl. ¶ 33; Sofia B. Decl. ¶ 22; Erica C. Decl. ¶ 19; Trumbly Decl.

18  ¶¶ 29–30). Yet none of these students had engaged in behaviors that posed a direct threat to

19  others. Indeed, multiple Named Plaintiffs and proposed class members provided evidence that

20  they had the support of friends, roommates, and the student community. (*See* Tina Y. Decl. ¶ 22,

21  Ex. 1; Jacob Z. Decl. ¶ 18, Ex. 3).

22       As a result of these practices, students with mental health disabilities live in a culture of

23  fear, worried that if they reach out to Stanford for help or Stanford perceives them to be at risk of

24  self-harm, Stanford will subject them to punitive leaves and exclusion from Stanford programs.

25  (*See* Ashley K. Decl. ¶¶ 10–12, 15, 20; Alex D. Decl. ¶ 14; Declaration of Grace E. ("Grace E.

26  Decl.") ¶ 15). Many students have provided testimony indicating that they are deterred from

27  seeking help from any campus-based assistance program for fear of being subject to these

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    policies and practices. (*See* Tina Y. Decl. ¶ 27; Jacob Z. Decl. ¶ 28; Fowler Decl. ¶ 23; Rose A.

2    Decl. ¶ 33; Sofia B. Decl. ¶ 24; Erica C. Decl. ¶ 22; Alex D. Decl. ¶ 19; Grace E. Decl. ¶ 15).

3    Students have also provided testimony that their friends, classmates, and fellow group members

4    are similarly deterred. (*See* Jacob Z. Decl. ¶ 29; Ashley K. Decl. ¶ 20; Alex D. Decl. ¶¶ 13, 15).

5            3.    The Experiences of Named Plaintiffs and Similarly Situated Students
              Further Demonstrate Stanford's Consistent Implementation of its
6             Discriminatory Leave Policies

7                  *a.    Individual Plaintiffs*

8            Named Plaintiffs and proposed class representatives Erik X., Tina Y., Jacob Z., Harrison

9    Fowler, Rose A., and Sofia B. have all been subject to the Discriminatory Leave Policies. (Erik

10   X. Decl. ¶¶ 9–18, Exs. 1–3; Tina Y. Decl. ¶¶ 14–23; Jacob Z. Decl. ¶¶ 2, 11–25, Exs. 1–2, 4–5;

11   Fowler Decl. ¶¶ 2, 10–21, Ex. 1; Rose A. Decl. ¶¶ 2, 11–30, Exs. 1–5; Sofia B. Decl. ¶¶ 11–18).

12   None received any interactive process to consider possible accommodations that would allow

13   them to stay on campus. (Erik X. Decl. ¶ 15; Tina Y. Decl. ¶ 19; Jacob Z. ¶ 19; Fowler Decl. ¶

14   14; Rose A. Decl. ¶ 13; Sofia B. Decl. ¶ 12). All had burdensome conditions placed on their

15   return—without any reference to their behavior being related to a disability or discussion of

16   possible reasonable accommodations. (Erik X. Decl. ¶¶ 16–17, Exs. 2–3; Tina Y. Decl. ¶ 23;

17   Jacob Z. Decl. ¶ 25, Exs. 1–2; Fowler Decl. ¶¶ 19–20, Ex. 1; Rose A. Decl. ¶¶ 27–30, Exs. 1–5;

18   Sofia B. Decl. ¶ 18). All have been deterred from utilizing campus services due to their fear of

19   being subjected to the Discriminatory Leave Policies. (Erik X. Decl. ¶ 20; Tina Y. Decl. ¶ 27;

20   Jacob Z. Decl. ¶ 28; Fowler Decl. ¶ 23; Rose A. Decl. ¶¶ 33–34; Sofia B. Decl. ¶ 24). Witness

21   declarations from a class member and from a former student confirm similar experiences. (Erica

22   C. Decl. ¶¶ 12–22; Trumbly Decl. ¶¶ 7–28).

23                 *b.    Organizational Plaintiff*

24           The Mental Health and Wellness Coalition ("Coalition") has been and continues to be

25   harmed by the Discriminatory Leave Policies, directly and through its members. (Ashley K.

26   Decl. ¶¶ 10–20). Numerous members of the Coalition and the Coalition's organizational

27   members, including Erik X., Tina Y., and Alex D., are students with mental health disabilities

28

who have been excluded from Stanford's programs and services through Stanford's Discriminatory Leave Policies and risk being excluded in the future and/or are deterred from further utilizing Stanford's programs and services as a result of Stanford's Discriminatory Leave Policies. (*Id.* ¶¶ 19–20).

### B.    Non-discriminatory Leave Policies Can Remedy the Harms to the Class

Stanford can address this problem on a class-wide basis by overhauling its policies to support, rather than punish, students with mental health disabilities. Recognizing that self-harm that results from mental health disabilities is disability-related behavior, Stanford can work with experts in the field of mental health in higher education to develop and implement University-wide policies that require individual evaluation of students at risk of self-harm; including analysis of whether behavior is disability-related, and engaging in an interactive consideration of possible reasonable accommodations prior to placing such students on a leave of absence.

### III.    THE PROPOSED CLASS

Plaintiffs respectfully request the Court certify a class under Federal Rules of Civil Procedure 23(a) and 23(b)(2) consisting of: all Stanford students who have a mental health disability and have been or will be subject to Stanford's policies and practices regarding students at risk of self-harm, including students who have been deterred from participating in the programs and services Stanford makes available to its students because they are aware of these policies and practices and fear being subjected to them.

Plaintiffs seek only injunctive and declaratory relief on behalf of the class. There is no claim for damages, so class-wide relief does not require an individualized analysis of each class member's injuries or damages.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

## IV.    LEGAL FRAMEWORK APPLICABLE TO CLASS CLAIMS

      1.    <u>Stanford Is Required to Provide Full and Equal Enjoyment of Its Programs to All Students, Regardless of Disability</u>

          ***a.    Stanford May Not Exclude Students from Its Education Programs and Services on the Basis of Their Mental Health Disabilities***

As an institution of higher education, Stanford is a place of public accommodation subject to Title III of the Americans with Disabilities Act ("ADA") and its implementing regulations. As such, it must provide individuals with disabilities full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations. *See* 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a). Stanford is subject to similar requirements under California laws. *See* Cal. Civ. Code §§ 51(b), (f); Cal. Gov. Code § 11135(a). Finally, because Stanford receives Federal financial assistance it must comply with Section 504 of the Rehabilitation Act of 1973 ("Section 504"). It therefore cannot exclude or discriminate against qualified individuals with disabilities by reason of their disability, offer them unequal or less effective services, or limit their enjoyment of those services. *See* 29 U.S.C. § 794(a); 34 C.F.R. § 104.4.

The policies and practices at issue target a class of students who are otherwise qualified to participate in Stanford's programs and services, but are at risk of self-harm due to mental health disabilities. Such students are, by definition, people with disabilities within the meaning of the law. *See* 29 U.S.C. §§ 705(20), 794(a); 42 U.S.C. § 12102; Cal. Civ. Code § 51(e)(1); Cal. Gov. Code §§ 11135(c), 12926(j), 12926.1. The behavior that Stanford's Discriminatory Leave Policies target (e.g., suicidal ideation and/or self-harm) is unquestionably a result of students' mental health disabilities—a reality Stanford acknowledges by requiring students subject to their policies to demonstrate proof of mental health treatment as a condition of readmission after a leave of absence. *See, e.g.*, *Gambini v. Total Renal Care*, 486 F.3d 1087, 1093 (9th Cir. 2007) (discrimination on the basis of disability-related behavior is disability discrimination within the meaning of the ADA).

Thus, by maintaining and implementing Discriminatory Leave Policies that exclude students at risk of self-harm due to mental health disabilities from full and equal access to its

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   programs and services, Stanford is discriminating on the basis of disability, in violation of the

2   federal and state disability rights laws. *See Gambini*, 486 F.3d at 1093 (noting that "[c]onduct

3   resulting from a disability is part of the disability" and not a separate basis for an adverse action

4   in case involving a plaintiff with bipolar disorder who engaged in disruptive behavior and

5   expressed suicidal thoughts); *see also Dark v. Curry Cty.*, 451 F.3d 1078, 1084 (9th Cir. 2006)

6   (citing *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139–40 (9th Cir. 2001)); *V.S. by &*

7   *through Sisneros v. Oakland Unified Sch. Dist.*, No. 14-CV-05144-JST, 2015 WL 3463475, at *5

8   (N.D. Cal. May 28, 2015) (school's failure to protect child from bullying for disability-related

9   behavior violated ADA and Section 504).

10          Discrimination on the basis of disability also includes a covered entity's failure to

11   provide reasonable modifications to its policies and procedures where doing so would allow

12   persons with disabilities access to its programs and services. *See Mark H. v. Lemahieu*, 513 F.3d

13   922, 937 (9th Cir. 2008); *see also Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996);

14   *and, e.g.*, *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1207 (9th Cir. 2016)

15   (citations omitted) (Under Section 504, a covered entity must work to identify accommodations

16   that would allow a student with a disability to "remain in her regular educational environment.");

17   *Wong v. Regent of Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999) (quoting *Buckingham v.*

18   *United States*, 998 F.2d 735, 740 (9th Cir.1993) (additional citations omitted). (Higher education

19   institutions must "gather sufficient information from the [disabled individual] and qualified

20   experts as needed to determine what accommodations are necessary."). Stanford consistently

21   implements its Discriminatory Leave Policies targeting students who are at risk of self-harm due

22   to mental health disabilities without considering any reasonable accommodations to allow such

23   students to participate in its programs and services—further violating federal and state disability

24   rights laws.

25          Stanford may attempt to argue that its exclusion of Named Plaintiffs and members of the

26   class from its programs and services is justified under a "direct threat" defense. However, under

27   Title III of the ADA and the Rehabilitation Act, risk to the student herself is not a basis to find

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   "direct threat." 42 U.S.C. § 12182(b)(3); 28 C.F.R. § 36.104. The ADA defines "direct threat" as

2   "a significant risk to the health or safety *of others* that cannot be eliminated by a modification of

3   policies, practices, or procedures or by the provision of auxiliary aids or services." 42 U.S.C.

4   § 12182(b)(3) (emphasis added). If the risk is only to the student herself, the decision about how

5   to weigh that risk is in the hands of the student and her doctors; it is not a legal basis for program

6   exclusion. Plaintiffs allege that defendants violate this requirement with a policy that—on its

7   face as well as in application—excludes students for being a threat to themselves alone.

8       Moreover, regardless of whether the direct threat exception applies to a risk of self-harm,

9   Stanford's standard practice violates the requirement that the risk assessment be based on

10  "medical or other objective evidence." *Bragdon v. Abbott*, 524 U.S. 624, 649 (1998) (citing *Sch.*

11  *Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 288 (1987)); 28 C.F.R. § 36.208(b) (1997)

12  (additional citation omitted). In addition, a covered entity may only exclude persons with

13  disabilities on the basis of direct threat after assessing whether there are any reasonable

14  accommodations to policies or procedures that would mitigate the potential threat to allow such

15  persons to participate in the entity's programs or services. 42 U.S.C. § 12182(b)(3) (defining

16  "direct threat" as a risk that "cannot be eliminated by a modification of policies…"); *see Tamara*

17  *v. El Camino Hosp.*, 964 F. Supp. 2d 1077, 1083–86, 1088 (N.D. Cal. 2013) (hospital's policy

18  barring service animals from behavioral health units violated ADA where hospital failed to

19  conduct an individualized assessment of whether a threat existed and to consider reasonable

20  accommodations); *see also Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1248 (9th Cir. 1999)

21  (reasonable accommodation that would mitigate risk defeats direct threat defense under ADA

22  Title I).

23          ***b.      Stanford May Not Discriminate Against Students with Mental***
                     ***Health Disabilities in its Housing Programs***
24

25      Housing law has similar antidiscrimination requirements. The Fair Housing Act prohibits

26  discrimination in the terms, conditions, sale, or rental of a dwelling, on the basis of disability.

27  *See* 42 U.S.C. § 3604(f)(1)–(2). *See also* 24 C.F.R. §§ 100.20, 100.60(a), (b). As persons with

28  mental health disabilities, Named Plaintiffs and members of the proposed class are protected

1 from discrimination under the Fair Housing Act. *See* 42 U.S.C. § 3602(h). *See also* 24 C.F.R.

2 § 100.201. Stanford's residence halls are covered "dwellings" under the Fair Housing Act. *See*

3 42 U.S.C. § 3602(b), (c). *See also* 24 C.F.R. § 100.201. Stanford's residence halls are also

4 covered under state housing laws. *See* Cal. Gov. Code §§ 12927(d), 12955(d).

5      Under the Fair Housing Act, it is unlawful to coerce, intimidate, threaten, or interfere

6 with any person in the exercise or enjoyment of any right granted or protected by section 3604 of

7 the Fair Housing Act. *See* 42 U.S.C. § 3617. California's Fair Employment and Housing Act

8 ("FEHA") also prohibits housing accommodations from discriminating against individuals on the

9 basis of disability. *See* Cal. Gov. Code § 12955(a). This state law prohibits terminating a rental

10 agreement, otherwise making unavailable a dwelling, or harassing tenants, based on disability.

11 *See* Cal. Gov. Code §§ 12927(c)(1), 12955(k). Under these laws, the policies that Named

12 Plaintiffs allege exclude students from Stanford's housing programs on the basis of disability-

13 related behaviors constitute illegal discrimination against students with disabilities. *See Lee v.*

14 *Retail Store Emp. Bldg. Corp.*, No. 15-CV-04768, 2017 WL 346021, at *13 (N.D. Cal. Jan. 24,

15 2017) (denying landlord's motion to dismiss plaintiffs' Fair Housing Act claim where plaintiff

16 sufficiently alleged that she was evicted based on disability-related behavior); *Cmty. House, Inc.*

17 *v. City of Boise*, 490 F.3d 1041, 1050 (9th Cir. 2006).

18      The Fair Housing Act also prohibits discrimination in the form of refusing to make

19 reasonable accommodations in rules, policies, practices, or services, when such may be

20 necessary to afford a person with a disability an equal opportunity to use and enjoy a dwelling.

21 *See* 42 U.S.C. § 3604(f)(3)(B). FEHA similarly defines discrimination to include refusal to make

22 reasonable accommodations in rules, policies, practices, or services when those accommodations

23 may be necessary to afford a person with a disability equal opportunity to use and enjoy a

24 dwelling. *See* Cal. Gov. Code § 12927(c)(1).

25      Similar to the ADA and Section 504, the fair housing laws have a narrow affirmative

26 defense for persons with disabilities who present "a direct threat to the health or safety of *other*

27 individuals." *See* 42 U.S.C. § 3604(f)(9); 24 C.F.R. § 100.202(d) (emphasis added). This

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

affirmative defense does not apply to behaviors or conduct by persons with disabilities that present a threat to themselves. *See* 42 U.S.C. § 3604(f)(9). Moreover, a covered entity may only exclude a person with a disability on the basis of direct threat after conducting an individualized assessment and considering reasonable accommodations to policies or procedures that would mitigate the potential threat to allow such persons to participate in the entities' programs or services. *See Lee*, 2017 WL 346021, at *13. *See also Roe v. Hous. Auth. of City of Boulder*, 909 F. Supp. 814, 822 (D. Co. 1995) ("requiring accommodation before denial of housing is 'entirely consistent with Congress' goal of eliminating housing discrimination based upon stereotypes, prejudice, or irrational fear of [persons with disabilities]'") (quoting *Roe v. Sugar River Mills Assocs.*, 820 F. Supp. 636, 640 (D.N.H. 1993)).[3] Here, Stanford maintains and implements its discriminatory policies without any assessment of possible reasonable accommodations whatsoever, thereby violating federal and state fair housing laws.

> 2.   Stanford Cannot Utilize Methods of Administration that Screen Out Students with Disabilities

Even "neutral" policies or methods of administration that screen out students for disability-related behavior can be illegal under Title III and Section 504. *See* 42 U.S.C. §§ 12182(b)(1)(D)(i), 12182(b)(2)(A)(i); 28 C.F.R. § 36.301(a); 34 C.F.R. §§ 104.4(b)(4), 104.42(b)(2). *See, e.g.*, *McGary v. City of Portland*, 386 F.3d 1259, 1265, 1268 (9th Cir. 2004). Covered entities must not "utilize standards or criteria or methods of administration that have the effect of discriminating on the basis of disability, or that perpetuate the discrimination of others who are subject to common administrative control." 28 C.F.R. § 36.204; *Celano v. Mariott Int'l, Inc.*, No. C 05-4004 PJH, 2008 WL 239306, at *13 (N.D. Cal. Jan. 28, 2008); *see also Indep. Living Res. v. Or. Arena Corp.*, 982 F. Supp. 698, 733 (D. Or.1997) ("the ADA requires more than merely refraining from active discrimination … a public accommodation may also be required to take affirmative steps to ensure that the 'opportunity' to patronize the facility is a

---

[3] *See also, e.g.* U.S. DEP'T OF HOUSING AND URBAN DEVELOPMENT, OFFICE OF FAIR HOUSING AND EQUAL OPPORTUNITY, *Joint Statement of the Department of Housing and Urban Development and the Department of Justice: Reasonable Accommodations Under the Fair Housing Act* (May 17, 2004).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

meaningful one"). Here, Stanford's leave policies, which effectively screen out students with mental health disabilities who are at risk of self-harm, are just such a method of administration.

3.  Stanford Has the Burden of Demonstrating that Accommodating Students at Risk of Self-Harm Would Present a Fundamental Alteration

Stanford may refuse to accommodate students with mental health disabilities if it can demonstrate that doing so would fundamentally alter its programs. *Wong*, 192 F.3d at 818 (citing *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 413 (1979)). However, such defenses cannot be applied in a blanket or across the board manner. *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 191 (2d Cir. 2015) (no deference to university's claims that provision of additional study time would fundamentally alter its rigorous academic standards where the university made no showing that such a determination was made individually). Indeed, the Ninth Circuit has noted,

> As we have observed in the employment context, mere[ ] speculation that a suggested accommodation is not feasible falls short of the reasonable accommodation requirement; the [ADA and Section 504] create a duty to gather sufficient information from the [disabled individual] and qualified experts as needed to determine what accommodations are *necessary* to enable [the individual to meet the standards in question].

*Wong*, 192 F. 3d at 818 (quoting *Buckingham v. United States*, 998 F.2d 735, 740 (9th Cir. 1993) (additional citation omitted) (internal quotation marks omitted)).

Here, Named Plaintiffs allege and the evidence demonstrates that Stanford fails to conduct the required assessments of possible accommodations that may allow students with mental health disabilities at risk of self-harm to avoid leaves of absence, including the relative cost and impact of such accommodations on Stanford's programs, as a matter of practice. In light of this failure, Stanford cannot assert that accommodating such students would present a fundamental alteration.

## V.   ARGUMENT

### A.   Legal Standards for Class Certification under Rule 23

Class certification is proper here because: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition, the class is certifiable under Rule 23(b)(2) because "the party opposing the class has acted or refused to act on grounds that apply generally to the class, [thereby making appropriate] final injunctive relief or corresponding declaratory relief [with respect to] the class as a whole." Fed. R. Civ. P. 23(b)(2).

As set forth below, Named Plaintiffs' allegations of Stanford's systemic Discriminatory Leave Policies satisfy this evidentiary standard for each of the Rule 23 requirements.

## B. The Class Meets the Requirements of Rule 23(a)

The proposed class meets all of the requirements of Rule 23(a), and is the most efficient and manageable method for addressing the system-wide discrimination resulting from Stanford's Discriminatory Leave Policies.

### 1. The Class is so Numerous that Joinder is Impracticable

The proposed class consists of hundreds of students, with substantial turnover as students matriculate and graduate. Thus, the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability is not impossibility, and instead refers only to the 'difficulty or inconvenience of joining all members of the class.'" *Soares v. Flower Foods, Inc.*, 320 F.R.D. 464, 474 (N.D. Cal. 2017) (citing *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964)). Plaintiffs need not meet any specific number, as "whether joinder is impracticable depends on the facts and circumstances of each case." *Bates v. United Parcel Service*, 204 F.R.D. 440, 444 (N.D. Cal. 2001). There is no "precise threshold," but courts routinely hold that the numerosity requirement is met when the proposed class contains forty or more members. *See Gonzalez v. Sessions*, No. 18-cv-01869-JSC, 2018 WL 2688569, at *3 (N.D. Cal. June 5, 2018) (finding a class of forty-three proposed members will typically easily satisfy the numerosity requirement); *The Civil Rights Educ. & Enf't Ctr. v. RLJ*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Lodging Tr.*, No. 15-CV-0224-YGR, 2016 WL 314400, at *6 (N.D. Cal. Jan. 25, 2016) ("Numerosity does not require a plaintiff to establish the exact number of persons in the class."). Typically, numerosity is satisfied when general knowledge and common sense indicate that the class is large. *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal. 2008).

Here, while the exact number of class members is unknown to Plaintiffs at this time, the proposed class far exceeds forty members. Stanford has an undergraduate population of more than 7,000 students. (*See* Seaborn Decl., Ex. 3) There are even more graduate students at the university, more than 9,000. (*See id.*). A recent national study found that thirty-five percent of students could be diagnosed with a mental health disability and that twenty percent of college students had considered suicide during their college career. (*See* Seaborn Decl., Ex. 4). Persons with mental health disabilities are at increased risk of self-harm and suicidality. (*See* Seaborn Decl., Ex. 5).

Campus surveys confirm these national figures apply at Stanford. A 2014 Stanford Daily survey found that, from more than 500 Stanford student respondents, thirty-one percent had experienced depression while at Stanford and fifty-one percent spent most of their time at a stress level of seven or eight out of ten. (*See* Seaborn Decl., Ex. 6). Additionally, a 2015 Associated Students of Stanford University ("ASSU") Mental Health Survey found that, of 1,687 Stanford student respondents, eighty-three percent desired more resources to deal with stress, and seventy-nine percent desired more resources to deal with depression/anxiety. (*See* Seaborn Decl., Ex. 7). These figures demonstrate that, at a minimum, hundreds of Stanford students will experience or be at risk of experiencing self-harm related to a mental health disability, thereby triggering Stanford's Discriminatory Leave Policies.

In addition to these estimates, eleven students have explicitly stepped forward to submit declarations, and several say that they personally know of other affected students. This is an

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

extraordinary number in light of the stigmatizing nature of the experience. Thus, there is more than sufficient evidence to show numerosity for class certification purposes.

2.    Class Members Share Many Common Questions of Law and Fact

This case presents several "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Named Plaintiffs' claims "'depend upon a common contention' that is 'of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 690 (9th Cir. 2018) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). For the purposes of Rule 23(a)(2), "even a single common question" satisfies the commonality requirement. *Dukes*, 564 U.S. at 359.

In a civil rights class action such as this one, "the commonality requirement can be satisfied by proof of the existence of systemic policies and practices that allegedly expose [class members] to a substantial risk of harm." *Parsons v. Ryan*, 754 F.3d 657, 681 (9th Cir. 2014); *see also Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012); *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005); *Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 512 (N.D. Cal. 2011) (commonality satisfied where plaintiffs allege "uniform policies and practices of failing to ensure" program access). This is especially true in actions for injunctive relief, which "by their very nature often present common questions satisfying Rule 23(a)(2)." *Baby Neal for and by Kanter v. Casey,* 43 F.3d 48, 57 (3d Cir. 1994)*; Davis v. Astrue*, 250 F.R.D. 476, 486–88 (N.D. Cal. 2008) (individual determinations on plaintiffs' varying disabilities were not required for facial challenge to Social Security Administration's policies and procedures); *Riker v. Gibbons*, No. 3.08 CV 00115 LRH RAM, 2009 WL 910971, at *1, *3 (D. Nev. Mar. 31, 2009) (commonality found in suit for injunction to reform prison health care).

The instant case is a quintessential civil rights class action alleging systemic discrimination: Named Plaintiffs' claims rest upon a core set of discriminatory policies and procedures that result in systemic exclusion of students with mental health disabilities. These

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

allegations raise legal and factual questions that affect all Stanford students with mental health disabilities at risk of self-harm in the same way. Here, there is a well-defined community of interest in the questions of law and fact affecting proposed class members in that they are Stanford students with mental health disabilities who have been harmed and excluded from Stanford's programs, through its policies and practices regarding students at risk of self-harm.

Thus, determination of liability in this case will not turn on any single class member's experience, but on whether Defendants' systemic policies and practices fail to satisfy their legal obligations. *See In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) ("In general, a few factual variations among the class grievances will not defeat commonality so long as class members' claims arise from 'shared legal issues' or 'a common core of salient facts.'") (citing *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003)); *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325–26 (D. Mass. 1997) (holding that certification of a class of disabled students challenging a university's accommodations policy was appropriate; individual evaluation of reasonable accommodation need did not defeat commonality or typicality).

### a.   Common Questions of Fact

"[B]ecause only one core issue need be common across the class, the presence of more individualized issues among class members will not preclude a finding of commonality." 7 Rubenstein, *Newberg on Class Actions* § 23:19 (5th ed. 2012) (citation omitted). The allegations here raise questions of fact common to the class. Resolution of each question "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Such common questions of fact include:

1.   Whether Stanford maintains and implements policies and practices that exclude students at risk of self-harm due to mental health disabilities from participating in its programs and services?

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

2.      Whether, as a matter of policy and practice, Stanford imposes punitive readmission conditions on students placed on leaves of absence due to having a mental health disability that puts them at risk of self-harm?

3.      Whether, as a matter of policy and practice, Stanford excludes students at risk of self-harm due to mental health disabilities from its programs and services without engaging in an interactive process to discuss reasonable accommodations that might allow such students to stay on campus and access the benefits of Stanford's programs and services?

4.      Whether, as a matter of policy and practice, Stanford removes or otherwise denies students at risk of self-harm due to mental health disabilities access to its residential housing programs?

5.       Whether, as a matter of policy and practice, Stanford fails to consider reasonable accommodations that would allow students at risk of self-harm due to mental health disabilities to stay in its residential housing programs?

6.      Whether Stanford can demonstrate that, in light of the size of its programs and the resources available to it, implementing a process to reasonably accommodate the needs of students at risk of self-harm due to mental health disabilities would fundamentally alter Stanford's programs?

### b.      Common Questions of Law

Many common questions of law exist for the class as a whole, which will generate common answers apt to drive the resolution of the litigation. *See Dukes*, 564 U.S. at 350. Such common questions of law include:

1.      Whether Stanford's policy and practice of imposing leaves of absence on students at risk of self-harm due to mental health disabilities discriminates on the basis of disability in violation federal and state disability laws?

2.      Whether the readmission conditions Stanford imposes on students placed on leaves of absence due to having a mental health disability that puts them at risk of self-harm discriminate on the basis of disability in violation of federal and state disability laws?

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

3.     Whether Stanford's policy and practice of excluding students at risk of self-harm due to mental health disabilities from its programs and services—without considering reasonable accommodations that could allow such students to stay on campus and access the benefits of those programs and services—discriminates on the basis of disability in violation of federal and state disability laws?

4.     Whether Stanford's policy and practice of removing or otherwise denying students at risk of self-harm due to mental health disabilities access to its residential housing programs constitutes discrimination in the terms and conditions of housing in violation of federal and state fair housing laws?

5.     Whether Stanford's policy and practice of failing to engage in an interactive process to consider reasonable accommodations that would allow students at risk of self-harm due to mental health disabilities to stay in its residential housing programs violates federal and state fair housing laws?

6.     Whether Stanford's Discriminatory Leave Policies constitute a method of administration that tends to screen out students with mental health disabilities, in violation of federal and state disability laws?

These common issues easily satisfy the commonality requirement. *See, e.g.*, *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1172 (9th Cir. 2010) ("Commonality exists where class members' 'situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'" (quoting *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990)); *Armstrong*, 275 F.3d at 868 (commonality in a civil rights suit "is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.").

3.     <u>The Named Plaintiffs' Claims are Typical of the Class</u>

Similarly, class certification is proper here because "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3);

1    *see Armstrong*, 275 F.3d at 868; *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.

2    1992) ("Typicality refers to the nature of the claim or defense of the class representative, and not

3    to the specific facts from which it arose or the relief sought.") (citation omitted). Because

4    typicality overlaps with commonality, a finding of commonality usually supports a finding of

5    typicality. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting that

6    commonality and typicality requirements frequently "merge").

7           Typicality is met when plaintiffs' claims are "reasonably co-extensive with those of

8    absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150

9    F.3d 1011, 1020 (9th Cir. 1998); *see also Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir.

10   2017) ("it is sufficient for typicality if the plaintiff endured a course of conduct directed against

11   the class."); *Wolin*, 617 F.3d at 1175; *Armstrong*, 275 F.3d at 869.

12          Plaintiffs meet all of the elements of typicality when: (1) the named plaintiffs and other

13   class members have the same or similar injury, (2) the action is based on conduct which is not

14   unique to the named plaintiffs, and (3) other class members have been injured by the same

15   course of conduct as the named plaintiffs. *See Torres v. Mercer Canyons Inc.*, 835 F.3d 1125,

16   1141 (9th Cir. 2016).

17          Here, the individual Named Plaintiffs and members of the organizational Named Plaintiff

18   have experienced the same harm. All have mental health disabilities and have been subject to

19   Stanford's policies regarding students at risk of self-harm. (*See* Ashley K. Decl. ¶¶ 18–20; Erik

20   X. Decl. ¶¶ 9–20; Tina Y. Decl. ¶¶ 14–23, 26–27; Jacob Z. Decl. ¶¶ 2, 11–25, 27–28; Fowler

21   Decl. ¶¶ 2, 10–23; Rose A. Decl. ¶¶ 2, 11–34; Sofia B. Decl. ¶¶ 11–18, 22–24). To redress this

22   harm, Named Plaintiffs rely on the same legal theories and seek the same declaratory and

23   injunctive relief as all members of the Proposed Class. (*See* Ashley K. Decl. ¶ 22; Erik X. Decl. ¶

24   23; Tina Y. Decl. ¶ 29; Jacob Z. Decl. ¶ 31; Fowler Decl. ¶ 25; Rose A. Decl. ¶ 37; Sofia B.

25   Decl. ¶ 26). Named Plaintiffs' claims are thus typical of the class.

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

4.    Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Finally, Named Plaintiffs have brought this case with one goal: systemic, injunctive relief. As such, "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court can resolve the two requisite questions in Named Plaintiffs' favor: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 634 (9th Cir. 2018) (citation omitted); *Hanlon*, 150 F.3d at 1020.

To answer these questions, courts look at a range of factors, including "an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011); *see In re online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) ("'Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement.' A conflict is fundamental when it goes to the specific issues in controversy.") (internal citations omitted). Adequate representation of counsel is generally presumed in the absence of contrary evidence. *Caltrans*, 249 F.R.D. at 349. *See* 1 Rubenstein, *Newberg on Class Actions* § 3:55 (5th ed. Supp. 2018).

Here, the Named Plaintiffs are adequate class representatives because they have been and remain at risk of being directly affected by Stanford's Discriminatory Leave Policies; and their interests are not antagonistic to, nor in conflict with, the interests of the class as a whole. Named Plaintiffs seek the same relief as other class members—e.g., a declaration that Stanford's existing Discriminatory Leave Policies violate disability rights and fair housing laws, and modifications to those policies and practices to ensure that Stanford does not remove/exclude students with mental health disabilities it perceives as being at risk of self-harm. Named Plaintiffs have

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

committed to pursuing such relief on behalf of the class. (*See* Ashley K. Decl. ¶¶ 21–22, Erik X.

Decl. ¶¶ 22–23, Tina Y. Decl. ¶¶ 28–29, Jacob Z. Decl. ¶¶ 30–31, Fowler Decl. ¶¶ 24–25, Rose

A. Decl. ¶¶ 36–37, Sofia B. Decl. ¶¶ 25–26).

Additionally, Disability Rights Advocates, the proposed class counsel, is a nonprofit that

has been specializing in disability law and in class action institutional reform litigation for

twenty-five years, and has served as class counsel in dozens of disability rights class actions.

(Seaborn Decl. ¶¶ 5–6). Named Plaintiffs' counsel are thus well-qualified to litigate the class-

wide claims of the Complaint and ably meet the adequacy standards of Rule 23(g). *See Sali*, 889

F.3d at 634 (citing *Jordan v. L.A. Cty.*, 669 F.2d 1311, 1323 (9th Cir. 1982) (*vacated on other*

*grounds by Cty. of L.A. v. Jordan*, 459 U.S. 810 (1982))). Counsel have done extensive work

investigating the claims in this action and have more-than sufficient resources to vigorously

litigate this case. In addition, counsel does not have any conflicts of interest with class members.

(Seaborn Decl. ¶ 17). Thus, the adequacy requirement of Rule 23(a) is satisfied as to both Named

Plaintiffs and Plaintiffs' Counsel.

### C.   The Class Meets the Requirements of Rule 23(b)(2)

For this injunctive relief class, certification is warranted because Named Plaintiffs allege

that Stanford "has acted or refused to act on grounds [generally applicable] to the class, [thereby

making appropriate] final injunctive relief or corresponding declaratory relief [with respect to]

the class as a whole." Fed. R. Civ. P. 23(b)(2). Thus, "a single injunction or declaratory

judgment would provide relief to each member of the class." *See Jennings v. Rodriguez*, 138 S.

Ct. 830, 851–52 (2018). The "Rule 23(b)(2) requirements are 'almost automatically satisfied in

actions primarily seeking injunctive relief.'" *Gray*, 279 F.R.D. at 520 (N.D. Cal. 2011) (quoting

*Baby Neal,* 43 F.3d at 58). In this inquiry, courts do not "examine the viability or bases of class

members' claims for declaratory and injunctive relief, but only to look at whether class members

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   seek uniform relief from a practice applicable to all of them." *Rodriguez v. Hayes*, 591 F.3d

2   1105, 1125 (9th Cir. 2011).

3         The claims raised by Plaintiffs in this action are precisely the sort that Rule

4   23(b)(2) was designed to facilitate. Rule 23(b)(2)'s primary role "has always been the

5   certification of civil rights class actions." *Parsons*, 754 F.3d at 686; *see also Amchem Prods.,*

6   *Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiffs seek broad declaratory and injunctive

7   relief—system wide improvements to Stanford's Discriminatory Leave Policies—on behalf of a

8   large class of all Stanford students who have a mental health disability and have been or fear

9   being subjected to Stanford's Discriminatory Leave Policies.

10         Additionally, Plaintiffs seek only class-wide injunctive relief to address the alleged

11   deficiencies, and do not seek any damages. Therefore, certification of the proposed class under

12   Rule 23(b)(2) is proper. Further, in light of the fact that the claims of all class members are tied

13   to Stanford's affirmative, program-wide obligations to provide programs and services in a

14   nondiscriminatory fashion, a failure to certify the class could result in duplicative claims and

15   attendant risk of inconsistent judgments. Because Stanford has acted and/or failed to act on

16   grounds generally applicable to the class as a whole, final declaratory and injunctive relief with

17   respect to the class as a whole is appropriate.

## VI.   CONCLUSION

         For the foregoing reasons, Plaintiffs respectfully request that the Court certify the class,

appoint Named Plaintiffs as the class representatives, and appoint Disability Rights Advocates as

class counsel.

DATED: July 16, 2018                          Respectfully submitted,

                                              DISABILITY RIGHTS ADVOCATES

                                              _____

                                              Maia Goodell, Attorneys for Plaintiffs