DocuSign Envelope ID: 70632EBE-A783-41B5-A868-0E6B5EABD757

STUART SEABORN (CA BAR NO. 198590)
MONICA PORTER (CA BAR NO. 311974)
Disability Rights Advocates
2001 Center Street, Fourth Floor
Berkeley, California 94704-1204
Telephone:    (510) 665-8644
Facsimile:    (510) 665-8511
sseaborn@dralegal.org
mporter@dralegal.org

MAIA GOODELL (Admitted *Pro Hac Vice*)
Disability Rights Advocates
655 Third Avenue, 14th Floor
New York, New York 10017
Telephone:    (212) 644-8644
mgoodell@dralegal.org

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| Mental Health & Wellness Coalition, Erik X., Tina Y., Jacob Z., Harrison Fowler, Rose A., Sofia B., | **Case No. 5:18-cv-02895-NC** |
|---|---|
| Plaintiffs, | **DECLARATION OF SOFIA B. IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| v. | |
| The Board of Trustees of the Leland Stanford Junior University DBA Stanford University, | |
| Defendant. | |

I, Sofia B., declare:

1. I make this declaration based on my personal knowledge and, if called to testify, I could and would testify as follows:

**Background**

2. I am 21 years old and currently enrolled as a Stanford student. I live in Stanford, California during the academic year.

3. Since first enrolling at Stanford in Fall Quarter 2015, I have founded and been involved with several extracurricular organizations on campus, in addition to conducting research with various professors and completing internships off campus.

4. I have a mental health disability.

**Stanford Excluded Me from Programs and Services Through its Leave of Absence Policy**

5. In Fall Quarter 2015 I had difficulty sleeping and made an initial appointment with Stanford's on-campus Counseling and Psychological Services ("CAPS") office.

6. On November 2, I went to my CAPS appointment and shared that I was experiencing suicidal ideation and had, in the past, engaged in non-suicidal self-harm. CAPS then initiated an involuntary hold at Stanford Hospital.

7. On November 6, Stanford Hospital discharged me to continue outpatient treatment at La Selva Mental Health Services, a private treatment facility in Palo Alto.

8. On December 4, I was having a bad day and decided to go to a drop-in CAPS appointment to speak with someone. The CAPS counselor recommended I return to Stanford Hospital and I agreed to do so. After a brief evaluation in the Emergency Room, the doctor dismissed me because I was not a threat to myself and did not need to be admitted.

9. During finals week that quarter, I experienced an anxiety attack, which is normal for me. I was with another student and still upset when my Resident Assistant saw me, offered to talk, and brought me to talk with my Resident Fellows, Alana Connor and Howard Rose.

10. At my Resident Fellows' recommendation, I voluntarily returned to Stanford Hospital on December 6, 2015, where I remained until December 9.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

---

*Mental Health & Wellness Coalition et al. v. The Board of Trustees of the Leland Stanford Junior University*,
Case No.: 5:18-cv-02895-NC
**Declaration of Sofia B. in Support of Plaintiffs' Motion for Class Certification**

1

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

11.     Dean of Students Chris Griffith visited me in the hospital and told me that I had to take a leave of absence because I had placed too much stress on staff and been disruptive to other students. I told Dean Griffith that I have an abusive family and going home would be detrimental to my mental health, but she did not change her mind.

12.     Stanford presented no options other than a leave of absence and did not tell me that the Office of Accessible Education was available to me. At no time did Stanford staff discuss or engage with me in conversations related to accommodations that might allow me to remain a student or remain in my housing.

13.     I did not want to take a leave of absence but signed the leave of absence form because I felt I did not have any other choice. It seemed to me that, if I did not sign, Stanford would kick me out anyway, so I decided to do what Stanford told me to do so that my parents would not accumulate unnecessary tuition costs and I could return to my studies as soon as possible.

14.     Stanford did not inform me, and so I did not know, about any opportunity to appeal the leave of absence.

15.     I moved my things out of my dormitory and Stanford charged my account a $350 "Late Termination of Occupancy" fee.

16.     I lived with my parents during Winter Quarter 2016, during which they would not speak to me. When anyone dropped by the house and asked why I was there, my parents said that I was just visiting. I felt like, in their eyes, the only good thing I had ever done had been rescinded.

17.     I tried to raise my spirits by visiting friends on campus but Stanford administrators told me by email that I could only be there for a couple of hours because I was not supposed to be on campus during a leave of absence.

18.     I returned to campus in Spring Quarter 2016. Griffith informed me by phone of numerous requirements on my re-enrollment and return to on-campus housing; including demonstrating that I had engaged in mental health treatment, submitting a letter from my doctor

*Mental Health & Wellness Coalition et al. v. The Board of Trustees of the Leland Stanford Junior University*,
Case No.: 5:18-cv-02895-NC
**Declaration of Sofia B. in Support of Plaintiffs' Motion for Class Certification**

**2**

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  detailing my diagnosis and treatment, and a personal statement taking blame and apologizing for

2  the whole thing. Again, these requirements failed to acknowledge that my past thoughts and acts

3  were related to a disability, or any mention of possible disability-based accommodations.

4        19.     When I went on leave, Stanford would not allow me to take the final exams that

5  had been proctored while I was in the hospital and required me to take incompletes on all my

6  classes. I had been earning high grades in those courses up until my hospitalization. When I

7  returned to Stanford a year later and Stanford finally allowed me to sit for those final exams, the

8  courses had different professors and different materials and Stanford made me take the new

9  exams. My grades suffered.

10        20.     This past Spring Quarter 2018, in addition to working part-time, I completed six

11 classes for a total of 20 units. Prior to that, in Winter Quarter 2018, I worked full-time (40 hours

12 per week) and completed 20 units. I have been taking on this large courseload in addition to

13 working so that I can pay my bills and graduate four years after my studies began, to avoid

14 incurring additional academic costs and raising suspicion among prospective employers.

15        21.     I am also not applying to jobs that require a transcript because I do not want a

16 prospective employer to see that I was not enrolled in Winter Quarter 2016 and decide to not hire

17 me because I took a leave of absence.

18        22.     Throughout my leave of absence experience, Stanford made me feel like a

19 liability. I felt that Stanford forced me to accept blame for actions related to my mental health

20 disability; rather than considering my specific circumstances, listening to me about the harm that

21 going home would cause me, and engaging with me about any options other than full exclusion.

22        23.     My mental health disability and treatment are ongoing, and I believe I could be

23 subject to Stanford's leave of absence policies and practices again.

24        24.     After my experience with Stanford's leave of absence, I felt like if I did anything

25 that Stanford perceived to be out of line with their strict mental health policies that I would be

26 removed from campus. I have not been back to CAPS and have told other students to not tell

27 anyone in authority about their mental health struggles because the administration will remove

28

*Mental Health & Wellness Coalition et al. v. The Board of Trustees of the Leland Stanford Junior University*,
Case No.: 5:18-cv-02895-NC
**Declaration of Sofia B. in Support of Plaintiffs' Motion for Class Certification**

3

DocuSign Envelope ID: 70632EBE-A783-41B5-A868-0E6B5EABD757

the student if they perceive their mental health to be a liability. I have not had any other interactions with Residence Deans or Dean Griffith since Stanford placed me on a leave of absence. I try to stay very quiet now.

### Ability to Serve as a Class Representative

25. I understand that if I am appointed as a class representative in this case, I have a duty to represent not just my own interests in this lawsuit, but also the interests of all class members.

26. My goal in this case is to get Stanford to comply with the law and provide students with mental health disabilities equal access to its programs and services.

27. I am not aware of any facts or circumstances that would limit my ability to be a plaintiff or represent the class in this case. To my knowledge, I have no conflict of interest with any class member or the class as a whole that would prevent me from carrying out my duties as a class representative.

I declare, under penalty of perjury under the laws of the United States of America and the State of California, that the foregoing is true and correct.

Executed on this 3 of July 2018, in San Francisco, California.

Sofia B.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

---

*Mental Health & Wellness Coalition et al. v. The Board of Trustees of the Leland Stanford Junior University*,
Case No.: 5:18-cv-02895-NC
Declaration of Sofia B. in Support of Plaintiffs' Motion for Class Certification

4