DocuSign Envelope ID: A2614437-3389-4F05-9249-B2DE2748FF51

STUART SEABORN (CA BAR NO. 198590)
MONICA PORTER (CA BAR NO. 311974)
Disability Rights Advocates
2001 Center Street, Fourth Floor
Berkeley, California 94704-1204
Telephone:   (510) 665-8644
Facsimile:   (510) 665-8511
sseaborn@dralegal.org
mporter@dralegal.org

MAIA GOODELL (Admitted *Pro Hac Vice*)
Disability Rights Advocates
655 Third Avenue, 14th Floor
New York, New York 10017
Telephone:   (212) 644-8644
mgoodell@dralegal.org

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Mental Health & Wellness Coalition, Erik X., Tina Y., Jacob Z., Harrison Fowler, Rose A., Sofia B.,<br><br>Plaintiffs,<br><br>v.<br><br>The Board of Trustees of the Leland Stanford Junior University DBA Stanford University,<br><br>Defendants. | **Case No. 5:18-cv-02895-NC**<br><br>**DECLARATION OF LARK TRUMBLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

DocuSign Envelope ID: A2614437-3389-4F05-9249-B2DE2748FF51

I, Lark Trumbly, declare:

1. I make this declaration based on my personal knowledge and, if called to testify, I could and would testify as follows:

**Background**

2. I am twenty-three years old and a recent Stanford graduate with a Bachelor of Arts degree in Psychology, with a minor in History.

3. I enrolled at Stanford in Fall 2012. In my first quarter, I formed numerous friendships and earned a 3.5 grade point average. Additionally, in my time at Stanford, I held a leadership role in the Sexual Health Peer Resources Center and served on a taskforce for sexual assault prevention. I also was an active member of the Stanford Axe Committee.

4. I graduated from Stanford in 2017, one year later than I had planned, and now work as a history teacher at Fusion Academy in Palo Alto.

5. I have a mental health disability.

**Stanford Excluded Me from Programs and Services Through its Leave of Absence Policy**

6. On February 3, 2013, while a student at Stanford, I was hospitalized for mental health treatment, after a suicide attempt.

7. Within forty-eight hours of my attempt, Residence Dean Carolus Brown told me I was "a liability," and "people like you tend not to succeed," or words to that effect. He told me that I would not be allowed back at Stanford until I proved I was stable.

8. On or about February 6, Brown informed me by letter that Stanford had revoked my housing and gave me two days to move out of my dormitory. The housing revocation letter referenced elements of Stanford's leave of absence policy; including requiring care in excess of that which the university could provide, being "unable or unwilling to carry out substantial self-care obligations," and the "impact" of my behavior "on the community."

9. Stanford charged me a $450 fee for "terminati[ng]" my housing occupancy.

10. After the hospital discharged me, Brown referred me to Dean of Students Chris Griffith to discuss a leave of absence.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Mental Health & Wellness Coalition et al. v. The Board of Trustees of the Leland Stanford Junior University*,
Case No.: 5:18-cv-02895-NC
**Declaration of Lark Trumbly in Support of Plaintiffs' Motion for Class Certification**

1

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  11. My psychiatrist at the hospital recommended that it would be best for me to return to Stanford.

3  12. I met with Dean Griffith in person and told her I did not want to take a leave of absence. She told me that I could appeal the leave of absence but Stanford would revoke my housing anyway. At Stanford, freshmen are required to live in university housing. Therefore, revoking my housing meant I would not be allowed to be enrolled in classes.

7  13. Shortly thereafter, Stanford sent me an email notification that Stanford was placing me on a leave of absence and I had twenty-four hours to submit a request for review.

9  14. I sought formal review of my leave of absence decision within that deadline and, the next day, sat before a panel of three administrators. Within a half hour of that meeting, Dean Griffith called me on the phone and notified me that the panel had denied my appeal.

12  15. I felt defeated. I loved being with my friends in a stimulating environment that my doctors and I felt were good for me and my mental health. Being home alone at my parents' house every day was detrimental to my mental health, though I was engaged in continued treatment.

16  16. In order to return to campus and university housing, Brown notified me by letter that Stanford required I submit a personal statement "demonstrat[ing] insight into the impact of [my] behavior on others." Stanford also required me to meet with on-campus counselors and administrators, and to sign a medical release to permit Stanford to communicate directly with my personal doctors.

21  17. The letter did not acknowledge that my past acts were related to a disability, or mention possible disability-based accommodations.

23  18. Stanford had all the power and I wanted to return to school, so I did what Stanford told me to do and assumed the contrite tone Stanford wanted to hear.

25  19. When Stanford allowed me to return the following Fall Quarter again as a freshman, I was sexually assaulted, which led to my drinking and engaging in self-harm.

---

*Mental Health & Wellness Coalition et al. v. The Board of Trustees of the Leland Stanford Junior University*,
Case No.: 5:18-cv-02895-NC
**Declaration of Lark Trumbly in Support of Plaintiffs' Motion for Class Certification**

**2**

DocuSign Envelope ID: A2614437-3389-4F05-9249-B2DE2748FF51

20. Dean Griffith and Associate Dean Koren Bakkegard called me in to discuss my behavior. Bakkegard said that my self-harm was a "distraction."

21. My mother later told me that Griffith and Bakkegard told her that Stanford counselors had determined that my self-harm was a coping mechanism, rather than suicidality.

22. Later that day, Koren Bakkegard notified me by letter that Stanford was again evicting me from on-campus housing. The letter stated that the removal from housing "also affect[ed] [my] eligibility to remain enrolled as a student," and that Bakkegard would forward me to the leave of absence process.

23. Stanford gave me less than three days to clean out and vacate my dormitory, and again charged me a $450 fee for "terminat[ing]" my housing occupancy. Again, Stanford failed to indicate consideration of any possible disability-related accommodations.

24. This time I did not appeal the housing revocation or leave of absence because I figured it would be futile.

25. Like before, Stanford notified me by letter that Stanford required me to draft and submit a personal statement that "demonstrate[d] insight into the cause(s) and impact(s) of [my] behavior," which Stanford again failed to acknowledge was related to a disability. Like before, I did as Stanford told me to do, including participating in a Skype meeting with Stanford's administrators.

26. At no time in either instance did Stanford staff discuss with me any accommodations that might allow me to remain a student or remain in my housing.

27. I returned to campus as a sophomore, in Fall 2014.

28. After these experiences, I did not speak with the administrators I had interacted with, nor any other Residence Dean, again — they were no longer a resource or a source of support for me.

29. Throughout these processes, I felt that Stanford repeatedly stigmatized and blamed me, disregarded medical and counseling assessments, imposed unreasonably short

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Mental Health & Wellness Coalition et al. v. The Board of Trustees of the Leland Stanford Junior University*,
Case No.: 5:18-cv-02895-NC
**Declaration of Lark Trumbly in Support of Plaintiffs' Motion for Class Certification**

3

deadlines for me to comply with onerous administrative requirements and uproot my life, and caused me harm.

30. It seemed to me that, rather than meaningfully conferring with me and my doctors and counselors, focusing on my health, offering resources, and engaging with me to explore accommodations to prevent full exclusion; Stanford treated me as a liability, stripped me of my decision-making power, forced me to accept blame for disability-related behavior, and punished me by excluding me and subjecting me to onerous readmission requirements.

I declare, under penalty of perjury under the laws of the United States of America and the State of California, that the foregoing is true and correct.

Executed on this 2 of July 2018, in Mountain View, California.

*Lark Trumbly*

Lark Trumbly

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Mental Health & Wellness Coalition et al. v. The Board of Trustees of the Leland Stanford Junior University,*
Case No.: 5:18-cv-02895-NC
Declaration of Lark Trumbly in Support of Plaintiffs' Motion for Class Certification

4